UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:06-CV-168

**MARK THOMPSON**                                                                                           **PLAINTIFF**

**v.**

**QUORUM HEALTH RESOURCES, LLC**                                                **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Defendant Quorum Health Resources, LLC's Motion to Exclude Plaintiff's Proposed Expert Witnesses (Docket #99) and Plaintiff Mark Thompson's Motion to Exclude the Testimony of Dr. Rodney E. Caldwell and to Strike Supplemental Report (Docket #100). Plaintiff has responded (Docket #121). Defendant has responded (Docket #120). This matter is now ripe for adjudication. For the following reasons, Defendant's Motion is DENIED, and Plaintiff's Motion is DENIED.

### BACKGROUND

Plaintiff Mark Thompson was an employee of Defendant Quorum Health Resources, LLC ("QHR") from 1994 to 2006. He was first hired as the chief executive officer ("CEO") of Cumberland County Hospital in Burkesville, Kentucky, in 1994. In 1999, Thompson accepted the position of CEO at Monroe County Medical Center ("MCMC") in Tompkinsville, Kentucky. He worked there as an at will employee until he was terminated on July 28, 2006. QHR is a healthcare management company that contracts with independent hospitals' Boards of Trustees to provide hospital management services. QHR typically hires a CEO and chief financial officer ("CFO") to oversee the business and financial operations of those hospitals. The CEO and CFO are accountable to QHR, the Board, and the hospital.

While serving as CEO of MCMC, Thompson grew concerned over QHR's control of

decisions normally reserved to hospital boards, including the selection of vendors. Thompson believed that QHR chose vendors that would benefit QHR, while increasing costs for the individual hospitals. In 2001, QHR made the decision to change the Group Purchasing Organization for the hospital from Premier to Healthtrust Purchasing Group. Thompson questioned QHR's assertions that the hospital would save significant amounts of money. Thompson sought the advice of attorney Greg Stivers, who suggested he look into a *qui tam* action. After hiring a private attorney and speaking to federal authorities, Thompson filed a *qui tam* lawsuit, under seal, on January 14, 2004. He did not inform MCMC or QHR that he filed this lawsuit.

In May of 2004, Thompson received an audit questionnaire from John Taylor of the accounting firm of Taylor Polson & Company. Taylor's firm performed annual audits for MCMC, and routinely gave audit questionnaires to management personnel. On August 4, 2004, Thompson returned the audit questionnaire to Taylor. His answers indicated that he had suspicions of fraud within the company. QHR officials made several efforts to meet with Thompson to discuss his answers to the questionnaire, but that meeting never took place. During this time, QHR was informed of Thompson's *qui tam* action.

On December 27, 2004, Thompson was suspended with pay, for failing to comply with his basic job duties and insubordination. Thompson joined the National Guard on February 28, 2005, for a one year period, during which he served in Iraq. Following his return, Thompson received a letter dated July 28, 2006, which informed him that QHR had terminated his employment. Thompson filed this action on October 25, 2006, alleging that QHR terminated him in violation of the anti-retaliation provision of the False Claims Act, 31 U.S.C. § 3729 *et seq*.

QHR now seeks to exclude the reports and testimony of Thompson's expert witnesses – Dr. Brian Heller, Mr. George Barrett, and Dr. Frank Slesnick.  Thompson seeks exclusion of QHR's expert witness, Dr. Rodney E. Caldwell.

## STANDARD

Rule 702 of the Federal Rules of Evidence admits testimony by experts.  Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  The Sixth Circuit uses a four-part test to determine the admissibility of expert testimony: "(1) a qualified expert (2) testifying on a proper subject (3) which is in conformity to a generally accepted explanatory theory (4) the probative value of which outweighs its prejudicial effect."  *United States v. L.E. Cooke Co., Inc.*, 991 F.2d 336, 341 (6th Cir. 1993) (quoting *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188, 1208 (6th Cir. 1988).  The requirement for qualifying as an expert under Rule 702 is a liberal one, although a witness must first establish his expertise by reference to knowledge, skill, experience, training, or education. *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000).  Expert opinion may be based on facts or data not otherwise admissible, so long as they are of the type "reasonably relied upon by experts in the particular field in forming opinion . . . ."  Fed. R. Evid. 703.  This may include inadmissible hearsay.  *See, e.g., Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 728-29 (6th Cir. 2002).

The Sixth Circuit, in *In re Scrap Metal Antirtrust Litigation,* examined Rule 702 and found that a proposed expert's opinion is admissible, at the discretion of the trial court, if the opinion satisfies three requirements: "First, the witness must be qualified by 'knowledge, skill, experience, training, or education.' Second, the testimony must be relevant, meaning that it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.' Third, the testimony must be reliable." 527 F.3d at 529. The trial court is guided by rule 702's general standards for assessing reliability: "whether the testimony is based upon 'sufficient facts or data,' whether the testimony is the 'product of reliable principles and methods,' and whether the expert 'has applied the principles and methods reliably to the facts of the case.'" *Id.*

The Supreme Court, in *Daubert*, also provided a non-exclusive list of factors for trial courts to consider in evaluating reliability. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-594 (1993). These factors include: "testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation and general acceptance in the scientific community." *In re Scrap Metal Antitrust Litigation*, 527 F.3d at 529 (citing *U.S. v. Langan*, 263 F.3d 613, 621 (6th Cir. 2001)). The test of reliability, however, is a flexible one. *Id.* "A court must be sure not 'to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.'" *Id.* Reliability instead means "an expert's testimony . . . must be 'supported by appropriate validation –i.e., 'good grounds,' based on what is known." *Id.* (citing *Daubert*, 509 U.S. at 590). "The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation."*Id.* at 529-30.

An attack on the application of a method "goes to the weight of the evidence, rather than to its admissibility." *Id.* at 530. There are circumstances in which a significant error in application may go to the admissibility, as opposed to the weight of the evidence; however, "'rejection of expert testimony is the exception, rather than the rule . . . and we will generally permit testimony based on allegedly erroneous facts when there is some support for those facts in the record." *Id.* In prior cases the court explained that "although opinions of the proffered testimony 'may very well be 'shaky,'' because the opinions were based upon facts in the record, and were not 'assumptions' or 'guesses,' challenges merely went to the accuracy of the conclusions, not to the reliability of the testimony." *Id.* (citing *Jahn v. Equine Services*, 233 F.3d 382 (6th Cir. 2000)); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000); *U.S. v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993) (stating "weaknesses in the factual basis of an expert witness' opinion . . . bear on the weight of the evidence rather than on its admissibility" and "it is up to opposing counsel to inquire into the expert's factual basis.").

In addition to complying with Rule 702, the admissibility of expert testimony "is also subject to a determination of relevancy under Rule 401 and balancing of probative value against likely prejudice under Rule 403." *United States v. Geiger*, 303 Fed. Appx. 327, 329 (6th Cir. 2008).

## DISCUSSION

Defendant seeks to prohibit the introduction of Plaintiff's expert reports and testimony on the basis that the opinions are on irrelevant matters, the experts are not properly qualified, and the proffered testimony will not aid the jury. Defendant objects to three experts: Dr. Brian Heller, Mr. George Barrett, and Dr. Frank Slesnick. Plaintiff seeks to exclude the testimony of

Dr. Rodney E. Caldwell on the grounds that he lacks experience, did not consider all of the relevant information in forming his opinion, and filed a supplemental opinion after the deadline without any substantial justification. Each expert is discussed in detail below.

**I.     Dr. Brian Heller**

Defendant argue that Dr. Heller's testimony should be excluded it is irrelevant and Dr. Heller is not qualified. Defendant argues that whether or not Plaintiff had a good faith basis to bring his *qui tam* lawsuit is irrelevant to the issues in this case. Defendant also asserts that Dr. Heller is not qualified to testify as to this issue because he is not an expert with regards to the merit of a claim filed under the False Claims Act. Plaintiff's response indicates that he no longer intends to call Dr. Heller as an expert at trial due to an apparent conflict of interest. Therefore, this issue is moot.

**II.    Mr. George Barrett**

Defendant objects to the proposed testimony of Mr. Barrett because it is unreliable and will not assist the jury in reaching its decision. Mr. Barrett's report offers the opinion that Plaintiff should consider a career in social work or counseling, despite lacking credentials for these jobs. Defendant argues that Mr. Barrett's opinion is not an independent vocational analysis because he failed to rely on expert knowledge. Instead, Defendant insists, he blindly accepted Plaintiff's statement that this is the profession he wished to pursue, despite the availability of other jobs, the additional schooling required, and the substantial pay cut. Plaintiff argues that Mr. Barrett's opinion is based on several well-founded factors and relevant theories relied upon in vocational counseling.

The Court finds that Defendant's objections to Mr. Barrett's testimony go to the weight

of the evidence, not to its reliability. Mr. Barrett is properly qualified to offer a vocational analysis. The fact that his opinion focuses on careers in social work or counseling does not necessarily make his opinion unreliable. Instead, Defendant is free to question Mr. Barrett on the reasons for this choice, as well as his reasons for rejecting other possible careers.

### III.     Dr. Frank Slesnick

Defendant asserts that because Dr. Slesnick relied on Mr. Barrett's report for Plaintiff's potential earnings in light of his termination, his proposed testimony should also be excluded. Defendant argues that Dr. Slesnick's calculation of Plaintiff's lost earnings is irrelevant and inaccurate because Mr. Barrett's opinion relies solely on Plaintiff taking a job as a social worker or counselor. In contrast, Plaintiff asserts that the figures used by Dr. Slesnick do not matter as his formula for calculating economic loss remains the same and would be helpful to the jury.

The Court has found that Mr. Barrettt's testimony is admissible. Seeing no other objection to Dr. Slesnick's testimony, the Court finds Dr. Slesnick's testimony admissible and denies Defendant's motion.

### IV.     Dr. Rodney E. Caldwell

Plaintiff argues that Dr. Caldwell's testimony should be excluded, and his supplemental report should be stricken. Plaintiff objects to Dr. Caldwell because he has no experience in providing vocational training to whistleblowers or those in healthcare management. In addition, Plaintiff objects to the fact that Dr. Caldwell based his opinion on only a fraction of the evidence relating to Plaintiff's job search efforts. Dr. Caldwell stated in his deposition that he relied on a statement made by Plaintiff that he had sent only ten or twelve applications out. Dr. Caldwell had inadvertently failed to locate some of the .pdf files that had been sent for his review. After

7

he located those files, he submitted a supplemental report, one week after his deposition, before the close of expert discovery and the time for objections. In the supplemental report, Dr. Caldwell's opinion as to Plaintiff's job search efforts did not change. Defendant argues that Plaintiff was not prejudiced by the submission of the supplemental report, especially since Plaintiff's counsel failed to seek further discovery or supplement his own experts' reports.

Plaintiff's objections as to Dr. Caldwell's experience with whistleblowers and those in the healthcare management profession are credibility issues that should be raised at trial. They do not constitute sufficient reasons for exclusion of Dr. Caldwell as an expert witness. The supplemental report is also admissible. The Court finds that the supplemental report was disclosed in a timely manner. The disclosure fell within the Court's deadline, and Plaintiff had the opportunity to seek further discovery, or a supplemental deposition of Dr. Caldwell. Further, since Dr. Caldwell's opinion remained unchanged after considering the additional evidence, the Court does not believe Plaintiff suffered any significant amount of prejudice by the delay. Plaintiff's motion should be denied.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion to Exclude Plaintiff's Proposed Expert Witnesses is DENIED, and Plaintiff's Motion to Exclude the Testimony of Dr. Rodney E. Caldwell and to Strike Supplemental Report is DENIED.