# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# BOWLING GREEN DIVISION
# CASE NO. 1:06-CV-168

**MARK THOMPSON**                                                                                           **PLAINTIFF**

v.

**QUORUM HEALTH RESOURCES, LLC**                                                           **DEFENDANT**

## MEMORANDUM OPINION

This matter is before the Court upon Defendant Quorum Health Resources, LLC's Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial (Docket #149). Plaintiff has responded (Docket #156). Defendant has replied (Docket #161). This matter is now ripe for adjudication. For the following reasons, Defendant's Motion is DENIED.

## BACKGROUND

Plaintiff Mark Thompson was an employee of Defendant Quorum Health Resources, LLC ("QHR") from 1994 to 2006. He was first hired as the chief executive officer ("CEO") of Cumberland County Hospital in Burkesville, Kentucky, in 1994. In 1999, Thompson accepted the position of CEO at Monroe County Medical Center ("MCMC") in Tompkinsville, Kentucky. He worked there as an at will employee until he was terminated on July 28, 2006. QHR is a healthcare management company that contracts with independent hospitals' Boards of Trustees to provide hospital management services. QHR typically hires a CEO and chief financial officer ("CFO") to oversee the business and financial operations of those hospitals. The CEO and CFO are accountable to QHR, the Board, and the hospital.

While serving as CEO of MCMC, Thompson grew concerned over QHR's control of decisions normally reserved to hospital boards, including the selection of vendors. Thompson believed that QHR chose vendors that would benefit QHR, while increasing costs for the

individual hospitals. In 2001, QHR made the decision to change the Group Purchasing Organization for the hospital from Premier to Healthtrust Purchasing Group. Thompson questioned QHR's assertions that the hospital would save significant amounts of money. Thompson sought the advice of attorney Greg Stivers, who suggested he look into a *qui tam* action. After hiring a private attorney and speaking to federal authorities, Thompson filed a *qui tam* lawsuit, under seal, on January 14, 2004. He did not inform MCMC or QHR that he filed this lawsuit.

In May of 2004, Thompson received an audit questionnaire from John Taylor of the accounting firm of Taylor Polson & Company. Taylor's firm performed annual audits for MCMC, and routinely gave audit questionnaires to management personnel. On August 4, 2004, Thompson returned the audit questionnaire to Taylor. His answers indicated that he had suspicions of fraud within the company. QHR officials made several efforts to meet with Thompson to discuss his answers to the questionnaire, but that meeting never took place. During this time, QHR was informed of Thompson's *qui tam* action.

On December 27, 2004, Thompson was suspended with pay, for failing to comply with his basic job duties and insubordination. Thompson joined the National Guard on February 28, 2005, for a one year period, during which he served in Iraq. Following his return, Thompson received a letter dated July 28, 2006, which informed him that QHR had terminated his employment. Thompson filed this action on October 25, 2006, alleging that QHR terminated him in violation of the anti-retaliation provision of the False Claims Act, 31 U.S.C. § 3729 *et seq*. The government declined to intervene in Thompson's *qui tam* action, and Thompson eventually voluntarily dismissed his *qui tam* complaint with prejudice.

A trial was held in this case from February 1, 2010 to February 5, 2010. The jury found in favor of Thompson in the amount of $30,000 pain and suffering, $400,644 back pay, and $70,000 front pay. Pursuant to 31 U.S.C. § 3730(h), the Court doubled the back pay amount. The Court granted Plaintiff 20 days to file any claim for interest on back pay, litigation costs and reasonable attorney's fees. Plaintiff filed his petition for these costs and fees on February 22, 2010, and the issue is still pending before this Court. Defendant has now filed a motion for judgment as a matter of law or, in the alternative, for a new trial.

## DISCUSSION

**I.      Motion for Judgment as a Matter of Law**

Defendant is entitled to judgment as a matter of law if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . . ." Fed. R. Civ. P. 50(a)(1). The Supreme Court has stated the following with regards to the standard the Court should apply when considering a motion for judgment as a matter of law:

> [I]n entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record. In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. . . . Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. . . . That is, the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150-51 (2000) (internal citations omitted).

The Court laid out the law governing retaliation claims under the False Claims Act in its December 7, 2009, Memorandum Opinion denying Defendant's motion for summary judgment:

3

> The False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, operates "to encourage any individual knowing of Government fraud to bring that information forward." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 562 (6th Cir. 2003) (citations omitted). Section 3730(h) prevents employers from discriminating or terminating employees because of an employee's lawful participation in furtherance of an action under the FCA. 31 U.S.C. § 3730(h); *Moore v. California Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 845 (9th Cir. 2002) ("The False Claims Act protects 'whistle blowers' from retaliation by their employers."). Plaintiff must establish three things to make out a claim for retaliatory discharge under the FCA:
>
>> (1) he engaged in protected activity; (2) his employer knew that he engaged in the protected activity; and (3) his employer discharged or otherwise discriminated against the employee as a result of the protected activity.
>
> *Yuhasz*, 341, F.3d at 566. The third part of the claim follows the *McDonnell Douglas* burden-shifting framework, common to Title VII retaliation claims. *Scott v. Metropolitan Health Corp.*, 234 Fed. Appx. 341, 346, 2007 WL 1028853, \*\*2 (6th Cir. 2007). The employer must offer a legitimate, non-discriminatory reason for the employee's termination, which the employee must then refute by demonstrating pretext. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).

December 7, 2009, Memorandum Opinion, p. 8-9. The parties stipulated to the fact that Plaintiff was engaged in protected activity and that the employer knew he was engaged in protected activity. The Court found in its Memorandum Opinion that Defendant's proffered reason for Plaintiff's suspension and termination was legitimate and non-discriminatory. Therefore, the only issue at trial was whether or not Plaintiff could establish pretext by showing that Defendant's proffered reason was not the actual reason or was an insufficient reason for Plaintiff's suspension and termination.

In support of its motion, Defendant first argues that Plaintiff failed to present evidence rebutting the legitimate, non-discriminatory reason proffered by Defendant for Plaintiff's suspension and termination. Defendant argues that Plaintiff did not present any contravening evidence to contradict testimony that Plaintiff was fired for violating the Code of Conduct. This

argument misconstrues the burden Plaintiff bears. Plaintiff is not required to show that he did not violate the Code of Conduct or that this was not the given reason for his termination. Rather Plaintiff must demonstrate that the given reason was pretextual. The Court set out this standard in a prior opinion:

> "A plaintiff will usually demonstrate pretext by showing that the employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008). Plaintiff may demonstrate pretext by other means as well, such as challenging the "reasonableness of the employer's decision 'to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation.'" *Risch v. Royal Oak Police Dept.*, 581 F.3d 383, 391 (6th Cir. 2009) (quoting *White*, 533 F.3d at 393 (internal citations omitted)). "'[M]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment.'" *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 470 (6th Cir. 2002) (quoting *Carney v. Cleveland Heights-Univ. Heights City School Dist.*, 758 N.E.2d 234, 245 (Ohio Ct. App. 2001)).

December 7, 2009, Memorandum Opinion, p. 9.

Defendant also argues that Plaintiff's evidence was mere conjecture and insufficient to support a jury verdict in favor of Plaintiff. The Court disagrees. Plaintiff presented enough evidence that a reasonable jury could have found in his favor. First, Plaintiff presented evidence demonstrating the temporal proximity between the time Quorum found out about Plaintiff's *qui tam* lawsuit and his termination. Although temporal proximity "cannot alone prove pretext, . . . [it] can be used an [sic] 'indirect evidence' to support an employee's claim of pretext." *Asmo v. Keane, Inc.*, 471 F.3d 588, 598 (6th Cir. 2006). Further, Plaintiff testified that Defendant's auditor, John Taylor, referred to him as a "whistleblower." Although John Taylor testified that he never made such a statement, it is the jury's duty to weigh the credibility of witnesses and determine whom to believe, and the Court may not make its own credibility determinations.

5

Chris Kelly's testimony demonstrates that Defendant did very little investigation and failed to speak with the auditor, Plaintiff's direct supervisor, or the U.S. Attorney prior to suspending Plaintiff. Kelly's testimony also demonstrates that he was aware of the fact that Plaintiff was claiming to be a protected employee under the False Claims Act prior to making the decision to suspend Plaintiff. The letters back and forth between Defendant, Plaintiff's attorney, and the U.S. Attorney's Office provide further evidence that the jury may have reasonably relied upon in finding pretext. The letters from Defendant indicate that Plaintiff refused to meet with them, yet neither Plaintiff nor his attorney ever made such declarations. Viewing all of this evidence together, and in a light most favorable to the nonmoving party, the Court finds that enough evidence was presented to demonstrate pretext and that a reasonable jury could have found for Plaintiff based on that evidence. Defendant's motion for judgment as a matter of law is denied.

## II. Motion for a New Trial

Defendants are entitled to a new trial under Federal Rule of Civil Procedure 59 only if the jury reached "a seriously erroneous result." *Holmes v. City of Massillon*, 78 F.3d 1041, 1045-46 (6th Cir. 1996). Defendants must demonstrate that 1) the verdict was against the weight of evidence; 2) damages were excessive; or 3) the trial was unfair to Defendants. *Id.* at 1046. "'[C]ourts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable.'" *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 820-21 (6th Cir. 2000) (quoting *Duncan v. Duncan*, 377 F.2d 49, 52 (6th Cir. 1967)).

Defendant argues that Plaintiff was allowed to introduce irrelevant evidence that was

6

unfairly prejudicial, confused the issues, and misled the jury.  Specifically, Defendant asserts that Plaintiff was allowed to introduce "voluminous amounts of irrelevant evidence" related to the underlying *qui tam* allegations, while Defendant was prohibited from introducing evidence that the government declined to intervene in the *qui tam* action and Plaintiff voluntarily dismissed said action.

"'Broad discretion is given to district courts in determinations of admissibility . . . and those decisions will not be lightly overturned.'" *Nolan v. Memphis City Schools*, 589 F.3d 257, 265 (6th Cir. 2009) (quoting *Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 897 (6th Cir. 2004)).  Further, the district court may change its prior evidentiary rulings as trial progresses. *See United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983), *aff'd*, 469 U.S. 38 (1984) ("[W]e see no reason why the trial court could not change its ruling, for whatever reason, when the evidence is actually offered and objected to at trial.").  "A ruling on a motion in limine is no more than a preliminary, or advisory, opinion that falls entirely within the discretion of the district court." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citing *Luce*, 713 F.2d at 1239); *see also Farfaras v. Citizens Bank and Trust of Chicago*, 433 F.3d 558, 565 (7th Cir. 2006) ("Regardless of whether a motion in limine originally barred the presentation of evidence . . . the district court may adjust a motion in limine during the course of a trial."); *United States v. Benedetti*, 433 F.3d 111, 117 (1st Cir. 2005) (noting that where additional evidence is made available during trial, a "midtrial decision to allow use of the evidence cannot fairly be characterized as an overruling of [the court's] original order"); *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1504 (11th Cir. 1985) (A party may object to an evidentiary issue at trial to "give the trial court an opportunity to reconsider the grounds of the motion in

light of the actual-instead of hypothetical-circumstances at trial." (citation omitted)).

During the pre-trial conference, the Court stated that it would allow Defendant to admit evidence that Plaintiff voluntarily dismissed his *qui tam* complaint. After further review and additional evidence, however, the Court determined that Defendant would not be allowed to introduce evidence of Plaintiff's voluntary dismissal of the *qui tam* complaint or the government's decision not to intervene. This is because the timing of these events made them irrelevant to the present case. The government chose not to intervene in May of 2008, whereas Plaintiff was terminated in July of 2006. Plaintiff voluntarily dismissed his complaint sometime after the government chose not to intervene. More importantly, the government's decision not to intervene does not necessarily indicate that this decision was made because the case had no merit. The government may choose not to intervene for a variety of reasons. Likewise, a plaintiff may dismiss a case voluntarily for any number of reasons–cost, time, etc. Because these decisions were irrelevant and occurred after Plaintiff's termination, the Court justly excluded them from evidence.

The Court also believes that Defendant did not suffer any unfair prejudice by exclusion of evidence of the government's decision not to intervene or Plaintiff's voluntary dismissal of the *qui tam* action. The Court acknowledges that Plaintiff was allowed to produce evidence speaking toward the underlying *qui tam* action. However, even though the parties stipulated to the fact that Plaintiff was engaged in protected activity, it was necessary for Plaintiff to provide some background on his beliefs about the state of the company at the time he filed his *qui tam* complaint in order for his subsequent actions to make any sense whatsoever to the jury. In addition, Defendant likewise introduced much of the evidence and did not object. Essentially,

8

both parties agreed to the introduction of the evidence to provide context. Both seemed to believe it was helpful to their case. Finally, Defendant was allowed to present evidence that Quorum was never assessed any fines or penalties by the government as a result of Plaintiff's allegations, thus mitigating any inference the jury might have had of Quorum's culpability. Accordingly, the Court finds that a new trial is unwarranted.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial is DENIED.

An appropriate order shall issue.