UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:06-CV-168

MARK THOMPSON                                                                                       PLAINTIFF

v.

QUORUM HEALTH RESOURCES, LLC                                                          DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Plaintiff's Petition for an Award of Attorney's Fees and Costs and Proposed Calculation of Pre-Judgment and Post-Judgment Interest (Docket #143). Defendant has responded (Docket #152). Plaintiff has replied (Docket #154). Defendant has filed a sur-reply (Docket #158). This matter is now ripe for adjudication. For the following reasons, Plaintiff's Petition is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Mark Thompson filed this action on October 25, 2006, alleging Quorum's violation of the retaliation provision of the False Claims Act, 31 U.S.C. § 3730(h). A trial was held in this case from February 1, 2010 to February 5, 2010. The jury found in favor of Thompson in the amount of $30,000 pain and suffering, $400,644 back pay, and $70,000 front pay. Pursuant to 31 U.S.C. § 3730(h), the Court doubled the back pay amount. The Court granted Plaintiff 20 days to file any claim for interest on back pay, litigation costs and reasonable attorney's fees. Plaintiff filed his petition for these costs, fees, and interest on February 22, 2010.

## DISCUSSION

**I.      Attorney's Fees**

If a plaintiff successfully establishes a violation of the retaliation provision of the False Claims Act, the Act permits the plaintiff to recover "reasonable attorneys' fees." 31 U.S.C. §

3730(h)(2). "The primary concern in an attorney fee case is that the fee awarded be reasonable." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) (citing *Blum v. Stenson*, 465 U.S. 886, 893 (1984)).

In determining a reasonable attorney's fee award, the Court must first determine the lodestar amount by multiplying the reasonable number of hours billed by a reasonable billing rate. *Id.* The Court may then adjust that amount upward or downward by applying the twelve-factor test first articulated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), and later adopted by the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 432 (1983). *Id.* at 471-72.[1] "Fee enhancements are permissible in rare cases of 'exceptional success.'" *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 621 (6th Cir. 2007) ("In the majority of cases, however, the quality of representation is 'reflected in the reasonable hourly rate.'" (citation omitted)).

"The party seeking attorneys fees bears the burden of documenting his entitlement to the award." *Reed*, 179 F.3d at 472 (citing *Webb v. Dyer County Bd. of Educ.*, 471 U.S. 234, 242 (1985)). "The fee applicant 'should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.'" *Id.* (citing *Hensley*, 461 U.S. at 433). Significantly, the Supreme Court

---

[1] The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Paschal v. Flagstar Bank*, 297 F.3d 431, 435 (6th Cir. 2002) (citing *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989)).

has reiterated that the resolution of a motion for attorney's fees should not itself become a "second major litigation."  *See Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health & Human Res.*, 532 U.S. 598, 609 (2001); *Hensley*, 461 U.S. at 437.

Plaintiff seeks $642,835 in attorney's fees.  Plaintiff uses a range of $300 to $350 per hour for Plaintiff's attorney, Mr. John Caudill, and $205 to $225 per hour for the work of Mr. Caudill's associate, Angela D. Lucas.  According to Plaintiff's documentation, Mr. Caudill billed 1442.5 hours of work, and Ms. Lucas billed 673.8 hours.  In support of the reasonableness of Mr. Caudill's fee, Plaintiff directs the Court to consider Mr. Caudill's over 20 years of experience, his particularized expertise in False Claims Act litigation, the Laffey-Matrix which provides for an hourly rate of $425 to $465 per hour for counsel with Mr. Caudill's experience, and two affidavits by Mr. Kent Wicker and Mr. Dean Furman describing $300 to $350 per hour as reasonable fees for this type of case.  Ms. Lucas was an associate with three to five years of experience at the time she worked with Mr. Caudill's law firm from 2006 to 2008.  Plaintiff asserts that Ms. Lucas regularly billed at rates of up to $250 per hour.

Defendant believes that Mr. Caudill's fee should not exceed $250 per hour; rather, Defendant asserts that a typical fee ranges from $180 to $250, depending upon the experience of the lawyer.  This argument is based on the affidavits of three attorneys from the Western District of Kentucky who handle employment retaliation cases.  All three attorneys stated that they did not know of any attorneys in the area charging $300 to $350 per hour for employment discrimination cases.  Defendant also argues that the number of hours claimed by Mr. Caudill and his associate should be reduced across the board because of the failure to provide a particularized billing record.

The Court must first determine a reasonable hourly rate for Mr. Caudill and Ms. Lucas. "To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004) (citing *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000)). The Court acknowledges Mr. Caudill's many years of experience and his specialization in False Claims Act cases. However, no affiant, even among those supplied by Plaintiff, testified to charging more than $300 per hour for similar cases. Further, although this case was filed under the False Claims Act, it is essentially an employment retaliation claim, and it is fair to compare it to other retaliation claims such as those brought under Title VII or the ADA. Finally, the Court has general knowledge of the legal community within which it sits, and believes that a fee of $300 to $350 per hour is excessive. As to Ms. Lucas, Plaintiff provided no evidence of the basis for her proposed fee, other than a statement that she regularly billed at rates up to $250 per hour. In contrast, Defendant presented evidence that fees for employment retaliation cases range from $180 to $250 per hour, depending on the attorney's experience. Weighing all of these factors with the amount of time and resources spent in litigating this case, the Court believes that $275 per hour is a reasonable billing rate for Mr. Caudill's work, and, because of her lack of experience, $180 per hour is reasonable for Ms. Lucas' work.

In order to calculate the lodestar amount, the Court multiplies the reasonable billing rate for each attorney by the number of hours billed. "[H]ours that are excessive, redundant, or otherwise unnecessary" should be excluded. *Hensley*, 461 U.S. at 434. From August of 2006 to February of this year, Mr. Caudill billed 1442.5 hours and Ms. Lucas billed 673.8 hours.

Defendant argues, however, that the billing record submitted by Plaintiff is insufficient for the Court to determine the reasonableness of the hours billed. "Plaintiff has the burden of providing for the court's perusal a particularized billing record." *Perotti v. Seiter*, 935 F.2d 761, 764 (6th Cir. 1991). The question in this case is how particularized the billing record must be to satisfy the Court's analysis. The Court may reduce the number of hours billed if documentation is inadequate. *Reed*, 179 F.3d at 472 (citing *Hensley*, 461 U.S. at 433).

Plaintiff's billing record consists of eight pages and is broken down into weekly entries from August 2006 to February 2010. Mr. Caudill and Ms. Lucas have separate billing sheets. However, the narrative portions of Mr. Caudill and Ms. Lucas's billing sheets are nearly identical. Indeed, Mr. Caudill and Ms. Lucas performed virtually the same tasks from August 2006 to November 2006. It is impossible for the Court to tell, based on the billing record submitted, whether the hours billed were duplicative or excessive. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. Therefore, the Court finds that a 25% reduction of hours is appropriate. *See, e.g.*, *Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999) (upholding district court's 20% reduction of hours for inadequate billing records); *Hudson v. Reno*, 130 F.3d 1193, 1209 (6th Cir. 1997), *overruled in part on other grounds*, 532 U.S. 843 (2001) ("[T]he district court may take such duplication into account by making a simple across-the-board reduction by a certain percentage."); *Tinch v. City of Dayton*, 199 F. Supp. 2d 758, 764-65 (S.D. Ohio 2002) (hours reduced by 30% for failing to adequately explain tasks performed in detail).

Based upon the foregoing, the Court finds that Mr. Caudill reasonably expended 1081.875 hours, and that Ms. Lucas reasonably expended 505.35 hours. At the respective hourly

rates of $275 and $180, Plaintiff is entitled to recover attorney's fees in the amount of $388,478.63.

The Court finds that an enhancement of this award is not justified. "[A]lthough the product of a reasonable hourly rate and the hours reasonably expended is presumed to be a reasonable attorney's fee, an award can be enhanced through the use of a multiplier to reflect 'exceptional success.'" *Tinch*, 199 F. Supp. 2d at 766-67 (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). Plaintiff must prove that such an adjustment is necessary. *Id.* at 767 (citing *Blum*, 465 U.S. at 898). Plaintiff's brief presents general statements about the challenges of this case and the specialized expertise necessary. The Court finds that this case did not present novel questions of law, nor did Plaintiff's counsel obtain what the Court would consider "exceptional success." Accordingly, the Court declines to apply any multiplier to the lodestar amount.

**II.    Costs**

Under the False Claims Act, a successful plaintiff on a retaliation claim is entitled to "compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees." 31 U.S.C. § 3730(h)(2). Plaintiff seeks $45,059.70 in litigation costs. Defendant asserts that Plaintiff's recoverable costs are limited to those allowed under 28 U.S.C. § 1920, and Plaintiff can only recover up to $11,126.34.

The rule for what costs may be taxed in federal court is established by 28 U.S.C. § 1920. Section 1920 allows recovery of the following costs:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. Plaintiff argues that Congress did not intend for § 1920 to limit the litigation costs available under 31 U.S.C. § 3730(h). If Congress had so intended, Congress would not have included an explicit reference to "*litigation* costs," as opposed to just "costs," in the anti-retaliation statute.

The case law on the issue of "litigation costs" under § 3730(h) is limited, and has not been addressed by the Sixth Circuit. However, the Seventh Circuit addressed the issue of whether § 1920 limits recovery for litigation costs under § 3730(h) in *Neal v. Honeywell, Inc.*, 191 F.3d 827, 834 (7th Cir. 1999). The Seventh Circuit held:

> *Crawford Fitting* and *West Virginia University Hospitals, Inc. v. Casey*, 499 U.S. 83, 111 [ ] (1991), hold that the list in § 1920 establishes that other expenses of suit are not "costs," and thus are not compensable *as* costs, unless some other statute provides for reimbursement. "Litigation costs" sounds like a reference to ordinary costs; that's what the list in § 1920 defines.

*Neal*, 191 F.3d at 834 (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987)). *Neal* has been cited positively by at least one other court dealing with issues related to attorney's fees and litigation costs under § 3730(h). *See Kakeh v. United Planning Org.*, 657 F. Supp. 2d 15, 18 (D.D.C. 2009) (finding that the plaintiff could not recover expert witness fees as "litigation costs" under § 3730(h)).

The Court finds that the Seventh Circuit's argument is persuasive and § 3730(h) litigation costs should be limited to those costs set out in § 1920. Therefore, Plaintiff may only recover a

7

portion of his submitted costs and expenses. Plaintiff's claimed costs appear to be easily divided into the following categories: (1) expert witness fees; (2) witness appearance and travel expenses; (3) deposition transcript and videography costs; (4) travel and mileage; (5) postage, copies, phone, fax, and other miscellaneous fees; and (6) filing fee, research, and PACER expenses.

A. *Expert Witness Fees*

Supreme Court and Sixth Circuit precedent clearly state that "expert witness fees may not be taxed as costs . . . because § 1920 does not provide for them." *L & W Supply Corp. v. Acuity*, 475 F.3d 737, 741 (6th Cir. 2007) (citing *Crawford*, 482 U.S. 437; *W. Va. Hosps. v. Casey*, 499 U.S. 83 (1991); *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 126 S. Ct. 2455 (2006)). Expert witness fees include the rates charged for the expert's time and services. *Id.* A party may still recover witness costs, as provided in 28 U.S.C. § 1821, for experts. *Id.* at 738.

Accordingly, Plaintiff is not entitled to recover for his experts' retainers, reports, time, and services other than trial attendance and travel expenses, as discussed in the next section.

B. *Witness Appearance and Travel Expenses*

Under 28 U.S.C. § 1821, a party may recover attendance and travel costs for all witnesses. Section 1821 states in part:

> (b) A witness shall be paid an attendance fee of $40 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance.
>
> (c)(1) A witness who travels by common carrier shall be paid for the actual expenses of travel on the basis of the means of transportation reasonably utilized and the distance necessarily traveled to and from such witness's residence by the shortest practical route in going to and returning from the place of attendance. Such a witness shall utilize a common carrier at the most economical rate

reasonably available. A receipt or other evidence of actual cost shall be furnished.

(2) A travel allowance equal to the mileage allowance which the Administrator of General Services has prescribed, pursuant to section 5704 of title 5 . . . shall be paid to each witness who travels by privately owned vehicle.

. . .

(d)(1) A subsistence allowance shall be paid to a witness when an overnight stay is required at the place of attendance because such place is so far removed from the residence of such witness as to prohibit return thereto from day to day.

28 U.S.C. § 1821(b), (c)(1)-(2), (d)(1). The current mileage allowance is set at $0.50 per mile. Privately Owned Vehicle (POV) Mileage Reimbursement Rates, http://www.gsa.gov/mileage (last visited April 23, 2010). The current subsistence allowance for an overnight stay in Bowling Green, Kentucky, is $116. Domestic Per Diem Rates, http://www.gsa.gov/perdiem (last visited April 23, 2010).

Both parties acknowledge that Plaintiff is entitled to $178.00 for Taylor Cook, $292.00 for Ronald Humes, $772.00 for Joe Beck, and $131.00 for Christopher Kelly. Plaintiff is also entitled to witness costs for George Barrett and Frank Slesnick. George Barrett's records indicate that he drove his own vehicle from South Charleston, West Virginia, a total of 652.0 miles. Further, he had two overnight stays during the week of the trial. His attendance fee covers his one day of trial testimony. All together, Mr. Barrett's costs total $598.00. Frank Slesnick's attendance fee covers his one day of trial testimony, and he had one overnight stay. Dr. Slesnick traveled by common carrier, so Plaintiff is entitled to recover Dr. Slesnick's actual expenses, totaling $458.40 for airfare and $144.77 for rental car expenses. Dr. Slesnick's costs total $759.17.

Plaintiff may recover $2,730.17 in witness appearance fees and travel expenses.

*C.     Deposition Transcript and Videography Costs*

Under § 1920, a party may recover "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case . . . ." 28 U.S.C. § 1920(2). Both parties agree that Plaintiff is entitled to court reporter fees for written transcripts. Defendant argues, however, that Plaintiff may not recover videography fees because he has failed to demonstrate their necessity in this case. A total of $4,244.45 in transcript fees is undisputed. Two bills combine transcript and videography fees, totaling $1,916.90 and $2,400.70 respectively. Defendant disputes the portion of these bills that are attributable to videography. Additional vidoegraphy fees presented by Plaintiff total $1,321.50. Plaintiff asserts that videographer expenses were necessary "given the fact that Plaintiff was the only party which used video-clip presentations at trial in order to establish a highly detailed and extensive case."

The Sixth Circuit has approved the taxing of costs under § 1920 for depositions that were both transcribed and videotaped. *See BDT Products, Inc. v. Lexmark Intern., Inc.*, 405 F.3d 415, 419-20 (6th Cir. 2005) (citing *Tilton v. Capital Cities/ABC, Inc.*, 115 F.3d 1471 (10th Cir. 1997)). The Court finds that the same rationale applies here, and Plaintiff may recover his full costs for deposition transcripts and videos.

Pursuant to § 1920(2), Plaintiff is entitled to $10,243.55 in deposition transcript and videography costs.

*D.     Travel and Mileage*

Plaintiff claims $7,522.21 in travel and mileage costs incurred by Plaintiff and his attorney. Costs "for travel and related expenses by attorneys . . . are not listed in 28 U.S.C. § 1920 and therefore may not be reimbursed as costs." *Calderon v. Witvoet*, 112 F.3d 275, 276

(7th Cir. 1997). Instead, these expenses are reimbursable as part of an award for attorney's fees. *Id.* Looking at Mr. Caudill's billing summary, it appears he has already included travel expenses within his compensable hours.

In addition, travel expenses incurred *by parties* are not covered by § 1920. *See Sales v. Marshall*, 873 F.2d 115, 122 (6th Cir. 1989). Therefore, the Court finds that Plaintiff may not recover costs for travel expenses and mileage incurred by Plaintiff and his attorney.

   *E.*  *Postage, Copies, Phone, Fax, and Other Miscellaneous Fees*

Plaintiff seeks $7,626.88 for costs related to postage, copies, fax, and long-distance telephone calls. Plaintiff seeks an additional $163.83 in FedEx shipping costs. The Sixth Circuit has held that "telephone and postage expenses[ ] are not taxable as costs pursuant to § 1920." *King v. Gowdy*, 268 F. App'x 389, 391-92 (6th Cir. 2008) (citing *Northcross v. Bd. of Ed. of Memphis City Schools*, 611 F.2d 624, 639 (6th Cir. 1979); *Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996)); *accord Tinch*, 199 F. Supp. 2d at 771.

Plaintiff may recover for "the costs of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4). Because Plaintiff has failed to document copy costs separately and state their necessity, the Court cannot award costs for copies at this time. Within 10 days of the filing of this Order, Plaintiff may file additional documentation with the Court for the Court's consideration of copy costs. If Plaintiff fails to file any additional documentation, no costs for copies will be reimbursed.

Plaintiff also seeks $935.34 for office supplies purchased for use at trial. Courts in general hold that such expenses are not taxable costs under § 1920. *See, e.g.*, *Hadix v. Johnson*, 322 F.3d 895, 900 (6th Cir. 2003) (finding that "supplies" are general expenditures that do not

11

constitute "costs" under § 1920); *Laura P. v. Haverford School Dist.*, 2009 WL 1651286, *9 (E.D. Pa. 2009) (slip copy) ("Costs for exhibit binders . . . are not authorized by § 1920."); *School Bd. of Lee County, Florida v. E.S.*, 2008 WL 4793655, *6 (M.D. Fla. 2008) ("Also, § 1920 does not provide for the reimbursement for the purchase of binders."); *Treaster v. HealthSouth Corp.*, 505 F. Supp. 2d 898, 905 (D. Kan. 2007) ("binders are not 'printing' or 'copies' as allowed by § 1920(3)"); *Tinch*, 199 F. Supp. 2d at 771 (no recovery for office supplies). The Court finds that Plaintiff may not recover these expenses.

Plaintiff seeks $125 for attorney-client working meals during the week of trial. These expenses are similar to travel expenses discussed *supra* in Section D. *See King*, 268 F. App'x at 391 ("[R]ecovery of travel and *subsistence expenses* will turn on factors such as whether the costs were incurred by the attorney or for a witness." (emphasis added)). The Court finds no other language in § 1920 authorizing a party's meal expenses as taxable costs. To the extent Plaintiff argues these were attorney-client meetings, the time spent during these meetings is more appropriately billed as attorney's fees. Therefore, Plaintiff may not recover his meal expenses.

   F.   *Filing Fee, Research, and PACER Expenses*

It is undisputed that Plaintiff is entitled to recover his $250 initial filing fee. 28 U.S.C. § 1920(1). Plaintiff also seeks $367.29 for research, case law, and PACER fees. Courts have held that computer research fees are not costs under § 1920. *See, e.g.*, *Duckworth*, 97 F.3d at 1399 ("[C]osts such as . . . computerized legal research . . . are clearly nonrecoverable."); *Haroco, Inc. v. American Nat. Bank and Trust Co. of Chicago*, 38 F.3d 1429, 1440-41 (7th Cir. 1994) (holding that computer research fees are attorney's fees, not "costs"). This includes PACER fees. *See, e.g.*, *Vistein v. American Registry of Radiologic Technologists*, 2010 WL 918081, *9

12

(N.D. Ohio 2010) (slip copy); *OneBeacon Ins. Co. v. First Midwest Bank*, 2009 WL 2612518, *2 (N.D. Ill. 2009) (slip copy). Therefore, Plaintiff's request for $367.29 in research and PACER fees is denied.

In conclusion, Plaintiff is entitled to recover $13,223.72 as litigation costs. Plaintiff may also file additional documentation as to his copy costs within 10 days of the filing of this Order.

## III. Costs and Attorney's Fees Incurred After Trial

Plaintiff requests additional attorney's fees for 48 hours of work Mr. Caudill spent preparing his reply to his petition for attorney's fees and his responses to Defendant's motion for judgment as a matter of law and new trial. "[T]ime spent preparing an application for attorney's fees is normally recoverable . . . ." *Black v. Lojac Enterprises, Inc.*, 117 F.3d 1420, 1997 WL 377051, *4 (6th Cir. 1997) (table). The Sixth Circuit has also approved an award of supplemental attorney's fees for post-trial work, including successfully defending a motion for judgment on the pleadings. *See McCombs v. Meijer, Inc.*, 395 F.3d 346, 362 (6th Cir. 2005). In this case, the Court ruled in favor of Plaintiff on Defendant's motion for judgment as a matter of law and new trial. The Court finds that Plaintiff is entitled to recover attorney's fees for post-trial work. However, the 25% reduction previously applied to Plaintiff's reasonable hours applies here as well, as Plaintiff has failed to properly document and account for the hours he spent working on post-trial matters. Therefore, Plaintiff is entitled to recover $9,900.00 (36 hours x $275/hour) in additional attorney's fees.

Plaintiff also requests an additional $880.20 in costs associated with obtaining the official trial transcript. The Court finds that Plaintiff may recover $880.20 in costs for the official trial transcript as it was necessary to respond to Defendant's motion for judgment as matter of law

and new trial. *See* 28 U.S.C. § 1920(2). However, Plaintiff has failed to provide any documentation for the cost of the trial transcript. Therefore, in order to recover $880.20 in costs, Plaintiff must produce such documentation within 10 days of the filing of this Order.

**IV.     Interest**

Finally, Plaintiff seeks prejudgment interest on the award of back pay at an 8% interest rate, as based on Dr. Slesnick's calculations. Plaintiff submits that this award should be based on the doubled back pay figure. Plaintiff also requests postjudgment interest on his compensatory damage award for the period from February 11, 2010 until judgment is satisfied. Defendant submits that, should the Court choose to award prejudgment interest, Dr. Slesnick's calculation based on the Treasury bill yield should be used for prejudgment interest. Further, Defendant argues that any prejudgment interest should be calculated prior to doubling the back pay award.

Both parties acknowledge that the Court has discretion to award prejudgment interest. *See E.E.O.C. v. Wooster Brush Co. Employees Relief Ass'n*, 727 F.2d 566, 579 (6th Cir. 1984). Further, should the Court choose to award prejudgment interest, it should be calculated prior to doubling the back pay. *Neal*, 995 F. Supp. at 896-97.

Dr. Slesnick's prejudgment interest figures are based on the back pay amount ($400,644.00) prior to doubling it. He submitted three options for awarding prejudgment interest. The first is based on Treasury bill rates and results in $9,567.00 in interest income. The second calculation is based on a 5% interest rate, and results in $33,655.00 in interest income. Finally, the final calculation is based on an 8% interest rate, resulting in $54,942.00 in interest income.

"Prejudgment interest is usually appropriate to make a discrimination plaintiff whole." *Thurman v. Yellow Freight Systems, Inc.*, 90 F.3d 1160, 1170 (6th Cir. 1996). Prejudgment interest is intended to compensate victims of discrimination for "the true cost of money damages they incurred" and to prevent victims from being "penalized for delays in the judicial process . . . ." *Id.* (quoting *E.E.O.C. v. Wilson Metal Casket Co.*, 24 F.3d 836, 841-42 (6th Cir. 1994)). A court may reduce an award of prejudgment interests for those delays attributable to the plaintiff. *Id.*

The Court finds that an award of prejudgment interest is appropriate in this case. Further, the Court finds that Dr. Slesnick's calculation based on the Treasury bill rates shall apply. This calculation is based on 28 U.S.C. § 1961, which governs postjudgment interest and states:

> Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding [ ] the date of the judgment.

28 U.S.C. § 1961(a). The Court is not obligated to adopt the statutory postjudgment rate for calculating prejudgment interest. *See Wooster*, 727 F.2d at 579. However, "the § 1961 rate has been upheld numerous times." *Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 986 (6th Cir. 2000). The Court finds that Plaintiff has failed to present a compelling reason as to why 5% or 8% should apply instead of the Treasury rate. Further, the Court believes that the Treasury rate would adequately compensate Plaintiff as if he had had use of that money from 2006 to 2010, thus serving its purpose in making Plaintiff "whole." For this reason, Plaintiff is entitled to prejudgment interest in the amount of $9,567.00.

Plaintiff is also entitled to postjudgment interest. "By federal statute, postjudgment

15

interest is allowed on all money judgments." *Hoover v. Provident Life and Acc. Ins. Co.*, 290 F.3d 801, 810 (6th Cir. 2002) (citing 28 U.S.C. § 1961). Plaintiff is entitled to postjudgment interest from the date of judgment, February 11, 2010, until the judgment is satisfied. *See* 28 U.S.C. § 1961(a). Like this Court's award of prejudgment interest, the amount of postjudgment interest is based on the Treasury rate as provided for by statute. *Id.*

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff shall provide to the Court, within 10 days of the filing of this Order, documentation of costs for the official trial transcript and any additional documentation for the Court's consideration of copy costs. Upon filing of those documents, the Court shall issue a final order.